In re ELLIPSO, INC.

Misc. No. 12–208 (RCL).

United States District Court, District of Columbia.

June 25, 2012.

Kermit A. Rosenberg, Butzel Long Tighe Patton, PLLC, Washington, DC, for Ellipso, Inc.

Alan R. Kabat, Bernabei & Wachtel, PLLC, Washington, DC, for Bernabei & Wachtel, PLLC.

Linda M. Correia, Natalie S. Walker, Wendell W. Webster, Webster, Fredrickson, Correia & Puth, P.L.L.C., Washington, DC, for Wendell W. Webster, Trustee.

Martha L. Davis, Office of the U.S. Trustee, Alexandria, VA, U.S. Trustee.

### MEMORANDUM AND ORDER

ROYCE C. LAMBERTH, Chief Judge.

Before the Court is a motion [1] to withdraw reference transmitted to this Court on April 4, 2012 and filed by John B. Mann, Mann Technologies, LLC, the Registry Solutions Company, John H. Page, and Robert B. Patterson,[1] all of whom are creditors of the debtor corporation, Ellipso, Inc. Upon consideration of the motion; the opposition filed by the debtor, its Chapter 11 Trustee, Wendell Webster, and the proponents of the pending joint plan of reorganization; and the creditors' reply, the Court will deny the motion.

---

1. The parties opposing the motion allege that not all of the movants named in the motion actually join that motion.

## I. BACKGROUND

Ellipso filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Columbia on February 25, 2009. The bankruptcy filing occurred after this Court entered judgment against Ellipso on September 30, 2008, in *Ellipso, Inc. v. John B. Mann, et al.*, Civ. No. 05–1186, 2006 WL 229894 (D.D.C.2006). That case involved a loan between Ellipso and Mann Technologies and brokered by Ellipso's CEO, David Castiel, and co-defendant Robert Patterson. Mann Technologies loaned Ellipso $90,000, secured by 492,611 shares of ICO Global Communications Holding Ltd. ("ICOHA") stock held by Ellipso. Those shares were transferred to Mann Technologies, which began selling them when Ellipso failed to make payments. According to Ellipso, while he arranged the loan Patterson fraudulently omitted that he was an incorporator of Mann Technologies, and thus that he had a conflict of interest in the deal. Ellipso filed suit, seeking damages and rescission of the loan agreement.

Ellipso also filed a motion for a preliminary injunction to prevent Mann Technologies from selling further shares, which the Court granted. However, discovery eventually revealed an e-mail sent by Ellipso's CEO, David Castiel, to Patterson, in which Castiel stated that he "never knew until May/June 2004 that [Patterson was] the 50% owner of Mann Tech and [Patterson] had a stake in the upside of the [ICOHA] stock." This e-mail contradicted prior representations by Ellipso that its management was not aware of the conflict until August 2004. Because Ellipso performed a number of acts in affirmation of the loan agreement following that e-mail, including execution of an amendment to the loan agreement, the Court determined that there was no basis for equitable relief. The Court thus granted the defendants summary judgment as to a number of eq-

uitable counts and dissolved the preliminary injunction. Following a jury trial and entrance of judgment as a matter of law for the defendants on the remaining counts, the defendants filed a motion for damages arising out of the preliminary injunction. The Court granted the motion to the extent of a $100,000 injunction bond posted by Ellipso. The defendants also filed a motion for attorneys' fees and expenses. The Court awarded $201,314.04 in attorneys' fees, finding that Ellipso instituted its lawsuit in bad faith and misrepresented the critical question of Castiel's knowledge of Patterson's conflict. Ellipso filed for bankruptcy under one month later.

Bankruptcy proceedings remained ongoing for almost two years before a number of creditors filed a Joint Plan of Reorganization on November 30, 2011, which Judge Teel adopted on May 1, 2012. In the interim, the movants filed the instant motion to withdraw the reference.

## II. DISCUSSION

■ Although bankruptcy cases are automatically referred to the bankruptcy court, *see* Local Bankr.R. 5011–1, 28 U.S.C. § 157(a), the district court retains the power to withdraw that reference:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The statute provides for both mandatory and permissive withdrawal. A district court is obligated to

withdraw the reference when cases or claims require "material consideration of non-bankruptcy federal law," but in any event may withdraw a reference based upon consideration of whether the proceedings are core proceedings, "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Security Farms v. International Bhd. Of Teamsters,* 124 F.3d 999, 1008 (9th Cir.1997); *see also In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir.1993) (collecting cases considering similar lists of factors); *Sergent v. McKinstry,* 472 B.R. 387, 404–405 (D.Ky.2012) (same); *Vieira v. AGM, II, LLC,* 366 B.R. 532, 538 (D.S.C. 2007) (noting importance of core/non-core distinction in permissive withdrawal analysis).

The movants seek withdrawal of the reference because, according to them, David Castiel intentionally withheld financial documents during the discovery process. Ellipso and Castiel were obligated to turn over electronic copies of various financial records, which they purported to give to the Trustee. The movants complained that the documents they received from the Trustee seemed to be lacking key financial records, including ledgers, spreadsheets, and other accounting documentation. Bankruptcy proceedings nonetheless continued, and, according to the movants, they were not provided the missing information until Ellipso produced a DVD containing the records on February 22, 2012. The movants allege that the records throw into doubt a number of decisions of the Bankruptcy Court, and that the nondisclosure has "tainted the entire bankruptcy proceeding." Mot. [1] at 13. The movants cite a number of federal non-bankruptcy laws implicated by Ellipso and Castiel's conduct, all of which are federal criminal laws and most of which involve fraudulent conduct. *Id.* at 13–14. They thus contend that withdrawal is mandatory, or that the Court should find cause for permissive withdrawal.

These allegations completely miss the mark. The reference of this matter to the Bankruptcy Court does not require Judge Teel to consider the litany of federal criminal statutes the movants argue are implicated. These criminal statutes are the *only* federal non-bankruptcy statutes the movants claim warrant withdrawal. But if the United States Attorney's Office believes the movants' allegations to be well-founded, that Office can attempt to secure an indictment and institute a wholly independent criminal matter. Judge Teel need not address those statutes to continue the bankruptcy proceedings. Rather, Judge Teel need only consider whether Ellipso and Castiel acted in bad faith in failing to disclose the financial documents at issue and, if so, the extent to which that warrants relief from the Bankruptcy Court.

And Judge Teel has already done so. In an oral ruling at a March 16, 2012 hearing, he determined that the nondisclosure by Castiel and Ellipso was unintentional. In response to various disclosure orders, Castiel had turned over electronic devices and CDs to the Trustee. Tr. Mar. 16, 2012, at 8–9. Although the CDs failed to include some documents, Judge Teel determined that to be an "inadvertent mistake," because Castiel produced paper copies of those omitted documents during other proceedings. *Id.* at 12–13. Movant John Page sent an e-mail to the Trustee, Wendell Webster, complaining that the CDs or DVD given to him by the Trustee was missing data. *Id.* at 13–15. However, Judge Teel determined that at that time both Ellipso and the Trustee held the good faith belief that all the relevant documents had been turned over. *Id.* at 17–18. And aside from the e-mail, neither Page nor

any of the other movants took steps to address the mistake. Accordingly, they did not "exercise[ ] reasonable diligence in attempting to get to the bottom of what had gone wrong," such as by following up with the Trustee or filing appropriate motions in the Bankruptcy Court. *Id.* at 18.

 Judge Teel has therefore already determined that no ramifications follow from the inadvertent nondisclosure. This determination occurred without Judge Teel undergoing any consideration, much less "material consideration[,] of non-bankruptcy federal law." *Security Farms,* 124 F.3d at 1008. The movants having failed to identify any non-bankruptcy issues that the Bankruptcy Court will be forced to determine in the future have not carried their burden to establish that withdrawal is mandatory. *See In re Vicars Ins. Agency,* 96 F.3d 949, 953 (7th Cir.1996). Further, there is little reason why permissive withdrawal would be appropriate. As noted, the movants have not identified any non-core proceedings or claims at issue. In addition, the Bankruptcy Court has confirmed the joint plan for reorganization following over three "very contentious" and "extremely hostile" years of this case, Tr. Mar. 16, 2012, at 6; it would be an enormous waste of judicial and of the parties' resources to withdraw the reference at this late date over a discovery issue that the movants should have timely resolved in June 2010. *See Security Farms,* 124 F.3d at 1008.

 Relatedly, there is ample reason to suspect that the motion itself is untimely. District Court Local Bankruptcy Rule 5011–2(b) requires that a motion to withdraw the reference be filed before the first meeting of creditors, or "not later than 14 days after service of any timely filed pleading or paper in which the basis for the motion first arises." The movants argue that they filed the motion within 14 days of February 22, 2012, when they first learned of the discovery omissions. But the movants suspected that discovery was lacking in June 2010; their delay in addressing this issue belies their contention that the Court should consider withdrawal at this late date. *Cf. Nielsen v. Miller,* 125 Fed.Appx. 227, 229 (10th Cir.2005) (unpublished opinion) (affirming denial of motion to withdraw reference when "claims were not brought to the district court's attention in a timely manner").

### III. *CONCLUSION AND ORDER*

The movants have failed to explain why continued adjudication of this case by the Bankruptcy Court would implicate non-core matters, and why they declined to resolve the nondisclosure issue two years ago when it first came to light. It is therefore hereby

**ORDERED** that the motion to withdraw reference is **DENIED.**

**SO ORDERED.**